## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

OTR Engineered Solutions, Inc.,

        Plaintiff,

    v.

Blacksmith OTR, LLC,

        Defendant.

Civil Action No.:

## COMPLAINT

Plaintiff OTR Engineered Solutions, Inc. ("OTR" or "Plaintiff") brings this action for declaratory and injunctive relief and to recover damages against Blacksmith OTR, LLC ("Blacksmith" or "Defendant").

## INTRODUCTION

1.     OTR and Blacksmith are competitors in the market for off-the-road tire and wheel solutions. Most of the tires produced by both companies focus on commercial and industrial uses. For example, OTR and Blacksmith both market tires for aerial work platforms ("AWP"), which are mechanized devices, such as cherry pickers or boom lifts, used in the maintenance and construction fields to raise personnel to elevated, inaccessible areas.

2.      OTR and Blacksmith formerly had a common owner—an individual named Frederick B. Taylor. Taylor was the named inventor on a number of patents and patent applications relating to tire treads that both OTR and Blacksmith sold.

3.      Taylor also facilitated the business of various companies in which he owned an interest, including by assigning and licensing patents and trademarks.

4.      For example, in a May 24, 2019 Intellectual Property Agreement (the "2019 IP Agreement"), Taylor and his entity F.B.T. Enterprises, Inc., granted OTR a non-exclusive, irrevocable, and perpetual license to "make, have made, sell, offer for sale, use, distribute, import and otherwise exploit any products" practicing the intellectual property shown in certain patents and patent applications related to tire tread designs. Further, Taylor and F.B.T. Enterprises granted OTR a non-exclusive, irrevocable, and perpetual license to "reproduce, distribute, make derivative works of, use and otherwise exploit" that intellectual property. Blacksmith is not a party to the 2019 IP Agreement.

5.      In March 2023, Blacksmith brought an unrelated suit against OTR in this Court. In that suit, Blacksmith alleged, among other things, that OTR had infringed four of Blacksmith's trademarks: "Stabilizer," "Lightning Bolt," "Wearmaster," and "Outrigger."

6.    In April 2024, OTR and Blacksmith settled that dispute. As part of the

settlement, they entered into a Master Supply Agreement (the "2024 Supply

Agreement").

7.    The 2024 Supply Agreement █████████████████████



8.    ████████████████████████████

9.    ████████████████████████████

_____

[1] The 2024 Supply Agreement ████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████

10.    ████████████████████████████████████

████████████████████████████████████████

███████████

11.    In the spring of 2024, Blacksmith contacted OTR's suppliers, including non-party Deestone, about the 2024 Supply Agreement. Upon information and belief, Blacksmith contended that because of the 2024 Supply Agreement, ███████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

█████████████████████

12.    Similarly, on or around June 20, 2024, Blacksmith sent a letter to OTR demanding that OTR not sell any of the tires bearing the same tread pattern as Blacksmith's tires, ███████████████████████████

████████████

13.    Blacksmith's June 20 letter concludes by "providing notice to OTR to immediately cease and desist all actions that are in violation of the Supply

Agreement and . . . provide clarification to its suppliers that OTR ███████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

    14.    Blacksmith's interpretation of the 2024 Supply Agreement is wrong.

The Agreement prohibits █████████████████████████████

████████████████████████████████████

████████████████████ But the Agreement does *not* prohibit

█████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████

    15.    Blacksmith's interpretation of the 2024 Supply Agreement

impermissibly broadens its scope to encompass ████████████████████

████████████████████████████████████████████

██████████████████████████

    16.    Moreover, even if the 2024 Supply Agreement did ███████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

17.     In its June 20 letter, Blacksmith incorrectly argued that the 2024 Supply Agreement supersedes the 2019 IP Agreement. But that is wrong because the parties to the 2024 Supply Agreement and the parties to the 2019 IP Agreement are not the same. It is also wrong because the subject matter of the two agreements is different.

18.     Blacksmith's notice to OTR's suppliers that they cannot provide OTR with certain tires has jeopardized OTR's relationships with those suppliers and OTR's business more broadly.

19.     One of OTR's suppliers, Deestone, sells tires to OTR that use the same tire tread pattern as the "Outrigger" product sold by Blacksmith (the "Competing Tires"). OTR's procurement of the Competing Tires from Deestone is consistent with the 2024 Supply Agreement because ████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

20.     Nevertheless, as a result of Blacksmith's conduct, Deestone has sought assurances and more information from Blacksmith and OTR about whether

OTR can legally purchase the Competing Tires from Deestone. Blacksmith has taken the position that Deestone cannot supply the tires to OTR.

21.    OTR will suffer irreparable injury, including the loss of customers and goodwill, if Deestone stops supplying the Competing Tires to OTR. For example, OTR customers who have placed orders for AWP tires will not have those orders timely fulfilled (if they can be fulfilled at all) and will almost certainly look to Blacksmith to supply comparable tires.

22.    Blacksmith's conduct has caused uncertainty about and created an actual controversy regarding the parties' rights and obligations under, *inter alia,* the 2024 Supply Agreement. Through this action, OTR seeks a declaratory judgment concerning the terms of the 2024 Supply Agreement and the 2019 IP Agreement, as well as a declaration that the tread design used on the Competing Tires is not subject to any intellectual-property protection.

23.    OTR also seeks an injunction and damages for Blacksmith's tortious interference with OTR's contractual and business relations with its suppliers.

## PARTIES, JURISDICTION, AND VENUE

24.    OTR is a Georgia corporation with its principal place of business in Rome, Georgia.

25.    Blacksmith is a Georgia limited liability company with its principal place of business at 6 Riverside Industrial Park NE, Rome, Georgia, 30161-7301.

On information and belief, Blacksmith's sole member is Pomp's Tire Service, Inc., a Wisconsin corporation with its principal place of business at 1123 Cedar Street, Green Bay, Wisconsin, 54301-4703.

26.    Blacksmith may be served through its registered agent for service of process, CT Corporation System, at 289 S Culver Street, Lawrenceville, Georgia, 30046-4805.

27.    This Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332 because complete diversity exists between the parties. OTR is a citizen of Georgia because it is a Georgia corporation with its principal place of business in Georgia. Blacksmith is a Wisconsin citizen because Pomp's Tire Service, Inc., who is Blacksmith's sole member, is incorporated in Wisconsin and its principal place of business is in Wisconsin. *See* 28 U.S.C. § 1332(c). The amount in controversy exceeds $75,000.00.

28.    This Court has personal jurisdiction over Blacksmith because Blacksmith's principal place of business is in Georgia, and it is organized under the laws of this state.

29.    Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because (i) Blacksmith is headquartered in, and has its principal place of business in, this district; (ii) Blacksmith intentionally and regularly

conducts business in this District; and (iii) a substantial part of the events, acts, and omissions giving rise to OTR's claims occurred in this District.

30.     Personal jurisdiction and venue also exist because OTR and Blacksmith agreed that "[a]ny dispute relating to the subject matter of [the 2024 Supply Agreement] must be brought in the United States District Court for the Northern District of Georgia, assuming that subject-matter jurisdiction over the Parties' dispute exists in that court."

## **FACTUAL ALLEGATIONS**

### ***The Trade Dress Allegedly Protecting the "Outrigger" Tread Design is Invalid***

31.     Fredrick B. Taylor, who is now deceased, had an ownership interest in various companies, including OTR Wheel Engineering, Inc., Blackstone/OTR, LLC and F.B.T. Enterprises, Inc.

32.     In 2014, OTR Wheel Engineering, Inc. (a predecessor of OTR), Blackstone/OTR, LLC (a predecessor of Blacksmith), and F.B.T Enterprises Inc. initiated litigation in the U.S. District Court for the Eastern District of Washington alleging that West Worldwide Services, Inc. and Samuel J. West infringed the tire tread used on the "Outrigger" tire. The plaintiffs claimed to have a distinctive trade dress in the "Outrigger" tire-tread design, which was federally registered in U.S. Trademark Registration No. 4,220,169 and appeared as follows:



33.    After a jury trial, the trade dress that allegedly protected the "Outrigger" tread design was determined to be invalid. *See OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 101 Fed. R. Evid. Serv. 774 (E.D. Wash. 2016).

34.    The Ninth Circuit Court of Appeals affirmed that determination. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1012 (9th Cir. 2018) (hereinafter the "*West* Litigation.").

35.    The U.S. Patent and Trademark Office "USPTO" cancelled U.S. Trademark Registration No. 4,220,169 per the order in the *West* Litigation.

36.    On information and belief, Blacksmith does not own any intellectual property whose subject matter includes the "Outrigger" tread design.

37.    Blacksmith has no enforceable patent, trademark, trade dress or other intellectual-property right in the "Outrigger" tread design that was at issue in the *West* Litigation.

### *The 2019 IP Agreement and OTR's Patent Rights*

38.    Frederick B. Taylor was also the named inventor on a number of patents.

39.    Among these, Taylor filed design patent application no. 29/643,323 (the "'323 Application"), seeking and claiming patent protection for the design of a tire tread.

40.    At the time, Taylor held an ownership interest in both OTR and Blacksmith. The companies no longer have any common ownership.

41.    Because of the common ownership, and to facilitate the business of each company, Taylor granted both OTR and Blacksmith rights in certain patents and trademarks.

42.    For example, Taylor assigned Blacksmith ownership of certain patents and patent applications, including the '323 Application, and certain trademarks.

43.    Separately, in 2019, Taylor, F.B.T. Enterprises, Inc. (one of Taylor's companies), and OTR executed the 2019 IP Agreement.[2]

44.    Blacksmith is not a party to the 2019 IP Agreement.

---

[2]    Taylor, F.B.T. Enterprises, Inc., and OTR also entered into a separate Trademark License Agreement in May 2019.

45.    In the 2019 IP Agreement, Taylor and F.B.T. Enterprises transferred to OTR certain rights in "Shared AWP IP," which is defined as "all Intellectual Property specifically listed on Exhibit B . . . under the heading 'Shared AWP IP,' including, any listed registrations and applications for registration of such Intellectual Property."

46.    Exhibit B to the 2019 IP Agreement lists the '323 Application under the heading "Shared AWP IP," and it lists the title for the '323 Application as "TIRE TREAD (Outrigger XT)."

47.    That is, Taylor and F.B.T. Enterprises granted to OTR a right and license to manufacture, sell, distribute, reproduce, make derivative works of, and otherwise exploit the Shared AWP IP, including the tread designs shown in the '323 Application.

48.    In February 2021, Taylor filed a divisional application in the '323 Application. The divisional application (which pursued patent protection for selected subject matter from the '323 Application) was assigned serial number 29,769,105 (the "'105 Application"). Thus, the '323 Application was the "parent" application and the '105 Application was the "child" application of the related '323 Application. The '105 Application expressly incorporated the '323 Application by reference as if fully set forth therein.

49.    In March 2021, the U.S. Patent and Trademark Office issued U.S. Design Patent No. D913,910 (the "'910 Patent") from the '323 Application.

50.    In June 2022, the U.S. Patent and Trademark Office issued U.S. Design Patent No. D955,974 (the "'974 Patent") from the '105 Application (i.e., the divisional application based on the '323 Application). At a minimum, the '974 Patent is a derivative of the '910 Patent.

51.    Given that the 2019 IP Agreement granted OTR an irrevocable license to the '323 Application, OTR has a non-exclusive, irrevocable license to any and all intellectual property shown in the '323 Application.

52.    Given that the '910 and '974 Patents both issued based on the disclosure of intellectual property in the '323 Application, OTR has a non-exclusive, irrevocable license to both the '910 and '974 patents.

### *OTR and Blacksmith Execute the 2024 Supply Agreement*

53.    In November 2023, Blacksmith filed suit against OTR in this Court and brought claims for trademark infringement in the product names "Stabilizer," "Lightning Bolt," "Wearmaster," and "Outrigger." Blacksmith also brought claims for patent infringement of a separate patent also not at issue here.

54.    While OTR disputed any liability in that action, OTR and Blacksmith reached a resolution of their dispute in April 2024. As part of that resolution, OTR and Blacksmith executed the 2024 Supply Agreement.

55.    The 2024 Supply Agreement served as ██████████████

████████████████████████████████████████

██████████████████████████████

56.    ████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

57.    OTR also agreed that ████████████████████

██████████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████

58.    ████████████████████████████

████████████████████████████████████████

████████████████████████████████

██████████████████████████████

59.    ████████████████████████████

████

60.     In other words, in the 2024 Supply Agreement, OTR agreed that█

████████████████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

***Blacksmith Erroneously Interprets the 2024 Supply Agreement***

61.     On June 20, 2024, Blacksmith informed OTR that Blacksmith

believes the 2024 Supply Agreement prohibits ██████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

██████████

62.     Blacksmith also contends that the 2024 Supply Agreement superseded

the 2019 IP Agreement, such that OTR no longer has a license in the patents or

patent applications that cover the tread designs of certain of the Products listed in

Schedule 2 (such as the '910 and '974 Patents).

63.    Thus, in sum, Blacksmith contends that OTR █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████

64.    Blacksmith's interpretation of the 2024 Supply Agreement is wrong

for numerous reasons.

65.    First, and as just one example, Blacksmith is wrong that the 2024

Supply Agreement supersedes the 2019 IP Agreement.

66.    The 2024 Supply Agreement contains an integration clause, which

states ███████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

67.     The 2019 IP Agreement, by contrast, is a contract between OTR, Taylor, and F.B.T. Enterprises. Blacksmith is not a party to the 2019 IP Agreement. And unlike the 2024 Supply Agreement, the 2019 IP Agreement does concern tread design, as it granted OTR a non-exclusive, irrevocable, and perpetual license to "make, have made, sell, offer for sale, use, distribute, import and otherwise exploit any products" practicing the intellectual property shown in certain patents and patent applications related to tire tread designs. The subject matter of the 2019 IP Agreement is the assignment and license of certain patents and trademarks (from Frederick B. Taylor and F.B.T. Enterprises to OTR). That subject matter is different from the subject matter of the 2024 Supply Agreement.

68.     Thus, the 2024 Supply Agreement cannot supersede the 2019 IP Agreement because the parties are different and the subject matters are different.

69.     As another example, the 2024 Supply Agreement limits ███████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

70.     ████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████

71.    As yet another example, Blacksmith's interpretation renders the

clause ████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

█████████████████████████

72.    Moreover, the parties' intent in executing the 2024 Supply Agreement

was to resolve a dispute about Blacksmith's trademarks and not the tire tread

designs at issue now. It would not make commercial sense for OTR to limit rights

that it already had (and that were not at issue) to settle an entirely unrelated

dispute.

### *Blacksmith Interferes with OTR's Supplier Relationships*

73.     Based on its erroneous interpretation of the 2024 Supply Agreement, Blacksmith has informed certain of OTR's suppliers that OTR cannot order certain tires from them.

74.     On information and belief, Blacksmith has informed Deestone, one of OTR's primary suppliers, that the 2024 Supply Agreement prohibits ███████

████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████

75.     The Competing Tires use the tread design that was the subject of the *West* Litigation. Because the *West* Litigation invalidated the trade dress in the "Outrigger" design, Blacksmith has no rights in that design that prevent OTR from using it. Moreover, that tread design is not subject to any patent or other intellectual-property protection. Alternatively, to the extent Blacksmith contends that the Competing Tires use a tread design patented in the '910 and '974 Patents, OTR holds a non-exclusive, irrevocable license under the 2019 IP Agreement.

76.     OTR purchases the Competing Tires from Deestone through purchase-order contracts. OTR buys more than $75,000 worth of Competing Tires from Deestone per year.

77.     OTR expects to purchase a substantial number of Competing Tires from Deestone this year, which it will use to fulfill more than $75,000 worth of customer orders.

78.     Since entering the 2024 Supply Agreement, none of the Competing Tires purchased by OTR from Deestone have used █████████████████ ████████████████████████████. OTR uses different molds for its tires from those used by Blacksmith, and OTR's molds do not include ███████████████████. In other words, OTR has fully complied with the 2024 Supply Agreement.

79.     OTR faces the real risk that Deestone will stop supplying the Competing Tires to OTR, which will result in irreparable injury to OTR by causing OTR to breach contracts with its customers and lose customers and goodwill. Customers who have placed orders for tires from OTR will not have those orders timely fulfilled, if they can be fulfilled at all, and the customers will look to Blacksmith to supply comparable products.

## COUNT I
## DECLARATORY JUDGMENT

80.     OTR realleges and incorporates by reference as though fully set forth herein each allegation in Paragraphs 1 through 79.

81.    Declaratory relief is appropriate because OTR and Blacksmith are in doubt over their rights, duties, and obligations under the 2024 Supply Agreement and the 2019 IP Agreement.

82.    An actual controversy has arisen and now exists regarding the terms of the 2024 Supply Agreement and the enforceability of the 2019 IP Agreement.

83.    OTR contends that the plain terms of the 2024 Supply Agreement apply and that OTR agreed ████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████

84.    OTR further contends that the integration clause of the 2024 Supply Agreement does not affect the 2019 IP Agreement, a separate contract about a different subject matter and between different parties than those to the 2024 Supply Agreement.

85.    By contrast, Blacksmith seeks to expand the 2024 Supply Agreement beyond its plain terms and argues that OTR agreed ██████████████████ ████████████████████████████████████████████ ██████████████████████████████████████████ ██████████

86.    Blacksmith further claims that the integration clause of the 2024 Supply Agreement caused that agreement to supersede the 2019 IP Agreement,

even though the 2019 IP Agreement was between different parties and concerned a different subject matter.

87.    OTR specifically denies Blacksmith's interpretation of the 2024 Supply Agreement and Blacksmith's contention as to the enforceability of the 2019 IP Agreement.

88.    Because of the parties' dispute, uncertainty now exists about their rights and obligations under the 2024 Supply Agreement and about OTR's rights under the 2019 IP Agreement.

89.    This Court should declare that Blacksmith cannot use the 2024 Supply Agreement to preclude lawful competition in trade dress that has been judicially determined to be invalid and in functional features of tire treads.

90.    This Court should declare that Blacksmith cannot use the 2024 Supply Agreement to preclude OTR from practicing the intellectual property licensed to it in the 2019 IP Agreement, including the '910 Patent and the '974 Patent.

91.    This Court should declare that Blacksmith has no right to preclude OTR from use of the tread design and trade dress that was at issue in the *West* Litigation.

92.    This Court should declare that the 2024 Supply Agreement's integration clause does not supersede the 2019 IP Agreement.

93.     This Court should declare that the 2024 Supply Agreement prevents

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT

94.     OTR realleges and incorporates by reference as though fully set forth herein each allegation in Paragraphs 1 through 79.

95.     As alleged above, Blacksmith interfered with OTR's existing contracts and contractual rights with third parties, including Deestone, by informing Deestone not to sell certain tires to OTR.

96.     Blacksmith acted without privilege in interfering with OTR's existing contracts and contractual relations.

97.     Blacksmith was a stranger to OTR's contract with Deestone.

98.     Blacksmith intended to injure OTR.

99.     But for Blacksmith's improper interference, OTR would not have had to act to repair its relationship with Deestone in order to ensure that Deestone would fulfill the terms of its contract with OTR by supplying Outrigger Tread tires.

100.    Blacksmith's tortious interference will cause financial injury to OTR in an amount to be proven at trial.

101.   In the alternative to compensatory damages, OTR seeks nominal damages against Blacksmith under O.C.G.A. § 51-12-4.

**COUNT III**
**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS**

102.   OTR realleges and incorporates by reference as though fully set forth herein each allegation in Paragraphs 1 through 79.

103.   As alleged above, Blacksmith interfered with OTR's existing business relations with third parties, including Deestone, by informing Deestone not to sell Outrigger Tread tires to OTR.

104.   Blacksmith acted without privilege in interfering with OTR's existing business relations.

105.   Blacksmith was a stranger to OTR's business relationship with Deestone.

106.   But for Blacksmith's improper interference, OTR would have obtained business from Deestone.

107.   Blacksmith intended to injure OTR.

108.   Blacksmith's tortious interference proximately caused financial injury to OTR in an amount to be proven at trial.

109.   In the alternative to compensatory damages, OTR seeks nominal damages against Blacksmith under O.C.G.A. § 51-12-4.

## COUNT IV
## TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, and PERMANENT INJUNCTION

110.  OTR realleges and incorporates by reference as though fully set forth herein each and every allegation in Paragraphs 1 through 109.

111.  OTR will be irreparably harmed if Blacksmith is not enjoined from further tortiously interfering with OTR's contractual and business relations with Deestone.

112.  OTR has no adequate remedy at law as to future damages if Blacksmith does not cease falsely representing to Deestone that Deestone's supply of tires to OTR is in violation of the 2024 Supply Agreement.

113.  OTR is therefore entitled to an injunction requiring Blacksmith to cease these false representations.

114.  Specifically, OTR requests that the Court grant injunctive relief—temporary, preliminary, and final—to restrain Blacksmith from representing to Deestone and other OTR suppliers that the 2024 Supply Agreement prohibits ██ ████████████████████████████████████████████████ ██████████

115.  All other preconditions and requirements necessary to grant injunctive relief have been satisfied.

## COUNT V:
## ATTORNEYS' FEES AND LITIGATION EXPENSES

116.   OTR realleges and incorporates by reference as though fully set forth herein each allegation in Paragraphs 1 through 109.

117.   Blacksmith's actions show that it has acted in bad faith, has been stubbornly litigious, and has caused OTR unnecessary trouble and expense.

118.   OTR should be awarded its reasonable attorneys' fees and expenses of litigation under O.C.G.A. § 13-6-11.

## PRAYER FOR RELIEF

WHEREFORE, OTR prays for the following relief:

a.    a trial by jury on all such triable issues;

b.    that process issue and that Blacksmith be served as provided by law;

c.    a declaratory judgment that the 2024 Supply Agreement applies only to ███████████████████████████████ ████████████████████████;

d.    a declaratory judgment that the 2024 Supply Agreement did not supersede the 2019 IP Agreement;

e.    a declaratory judgment that Blacksmith cannot use ████████████ ███████████████████████████████ to preclude lawful competition in the functional features of tire treads;

f.      a declaratory judgment that Blacksmith cannot use ███████████

███████████████████████████████████ to preclude OTR

from practicing the inventions licensed to it in the 2019 IP

Agreement;

g.      a declaratory judgment that, to the extent the '910 Patent and the '974

Patent are directed to non-functional elements, OTR has a valid

license thereto in accordance with the 2019 IP Agreement;

h.      a declaratory judgment that Blacksmith has no right to preclude OTR

from use of the trade design and trade dress that was at issue in the

West Litigation;

i.      damages incurred as a result of Blacksmith's tortious interference

with OTR's contractual and business relationships;

j.      compensatory, consequential, incidental, nominal and all other

damages allowed by law, including interest thereon;

k.      attorneys' fees and expenses of litigation; and

l.      any other relief that the Court may deem just and appropriate.

## **DEMAND FOR JURY TRIAL**

OTR hereby demands a trial by jury on all claims and issues so triable.

*[signature on following page]*

Respectfully submitted, this 31st day of July, 2024.

_/s/ James W. Cobb_
James W. Cobb
Georgia Bar No. 420133
Julia Blackburn Stone
Georgia Bar No. 200070
Cameron B. Roberts
Georgia Bar No. 599839
Emily C. Snow
Georgia Bar No. 837411
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
jcobb@caplancobb.com
jstone@caplancobb.com
croberts@caplancobb.com
esnow@caplancobb.com


_/s/   Stephen M. Schaetzel_
Stephen M. Schaetzel
Georgia Bar No. 628653
sschaetzel@mcciplaw.com
Warren Thomas
Georgia Bar No. 164714
wthomas@mcciplaw.com
Meunier Carlin & Curfman LLC
999 Peachtree Street NE, Suite 1300
Atlanta, Georgia 30309
Telephone: (404) 645-7700
Facsimile: (404) 645-7707

_Counsel for Plaintiff OTR Wheel
Engineered Solutions, Inc._