# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ROME DIVISION

| | |
|---|---|
| OTR ENGINEERED SOLUTIONS, INC.,<br><br>   Plaintiff,<br><br> v.<br><br>BLACKSMITH OTR, LLC,<br><br>   Defendant. | Civil Action No. 4:24-cv-00186<br><br>**Jury Trial Demanded** |

**REPLY IN SUPPORT OF DEFENDANT BLACKSMITH OTR, LLC'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO CONSOLIDATE**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………………..ii

I.    OTR Fraudulently Induced Blacksmith to Dismiss its Claims………………2

     A.    OTR Knows that Blacksmith Owns Intellectual Property Rights in *both* the Trademarks and the Tread Designs…………………………..2

     B.    OTR *Knows* that its Conduct Infringes Blacksmith's Rights and is Reverse Passing-Off; the Exact issue has been Litigated……………...5

     C.    Blacksmith Continues to Discover Evidence that OTR Never Included to Purchase the Product(s) Under the Supply Agreement…..7

II.    OTR's *Anticipatory* Declaratory Judgment Action Should Be Dismissed….10

III.    In the Alternative, Consolidation or a Stay is Appropriate………………….13

IV.    Conclusion…………………………………………………………………….15

# TABLE OF AUTHORITIES

**Cases:**                                   **Page(s):**

*Amerada Petroleum Corp. v. Marshall*,
  381 F.2d 661 (5th Cir. 1967)……………………………………………11, 13, 14

*Earthcam, Inc. v. Oxblue Corp.*,
  No. 1:11-CV-2278-WSD, 2014 WL 793522 (N.D. Ga. Feb. 26, 2014)………...10

*Hendrix v. Raybestos-Manhattan, Inc.*,
  776 F.2d 1491 (11th Cir. 1985)……………………………………………………13

*Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*,
  342 U.S. 180 (1951)……………………………………………………………...11, 13

*OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*,
  897 F.3d 1008 (9th Cir. 2018)……………………………………………………..5, 11

*Pacheco v. Charles Crews Custom Homes*,
  289 Ga. App. 773, 658 S.E.2d 896 (2008)…………………………………………..10

*Ven-Fuel, Inc. v. Dept. of the Treas.*,
  673 F.2d 1194 (11th Cir. 1982)……………………………………………………10

**Rules and Regulations:**

15 U.S.C. § 1125(a)……………………………………………………………………6

Fed. R. Civ. P. 42(a)…………………………………………………………………..13

Ga. Code Ann. § 13-5-5……………………………………………………………10

Defendant Blacksmith OTR, LLC ("Blacksmith") respectfully submits this Reply in Support of its Motion to Dismiss or, in the Alternative, to Consolidate [Doc. 11] and to respond to Plaintiff OTR Engineered Solutions, Inc.'s f/k/a OTR Wheel Engineering, Inc. ("OTR" or "Defendant") Opposition Brief [Doc. 21].

In opposing Blacksmith's Motion, OTR wholly omits the key fact that OTR is **_not_** simply exercising it's right under the Supply Agreement to not purchase "Product(s)" from Blacksmith. Rather, OTR was covertly taking steps during the negotiation of the Supply Agreement to procure *the exact same* "Product(s)"—using Blacksmith's protected tread designs ("Products"), supplier, and molds created to produce Blacksmith's "Product(s)" but removing (either by buffing off or plating over) Blacksmith's trademarks—despite expressly agreeing *not* to "manufacture/procure and sell" the "Product(s)" **and** agreeing not to violate Blacksmith's intellectual property rights. [Doc. 12 at 13, ¶1.1]. OTR's conduct not only infringes Blacksmith's trademark rights but this reverse passing-off of Blacksmith's Products and trademarks that will cause significant confusion among consumers. Consumers are likely to think that Blacksmith changed the name of its Products, diminishing the value of Blacksmith's trademarks.

What's more is that OTR *knows* this conduct is improper, and **_not_** contemplated by the Settlement Agreement, because OTR and Blacksmith jointly litigated this very issue against a competitor, against whom the Ninth Circuit

1

affirmed liability for reverse passing off of Blacksmith/OTR's trademarks.

This is a far cry from a good faith settlement negotiation—it is fraud, which necessitates re-opening the First-Filed case and dismissing the Second-Filed action.

**I.    OTR Fraudulently Induced Blacksmith to Dismiss its Claims**

OTR's position that it is simply exercising its right under the Supply Agreement to not buy "Product(s)" from OTR is only a half truth. The *full* truth is that OTR had Blacksmith dismiss its well-founded claims on OTR's false promise that it would not "manufacture/procure and sell" the specifically identified tires, all while OTR was making arrangements to do just that. OTR's conduct of *removing* or covering up Blacksmith's trademarks from Blacksmith's Products to avoid payment under the Settlement Agreement reeks of deception and misconduct. Moreover, particularly where OTR was previously selling Blacksmith's Products under the prior Trademark License Agreement ("TLA"), OTR's taking of Blacksmith's Products and replacing Blacksmith's trademarks on those same Products causes consumer confusion and harm to Blacksmith's trademark and trade dress rights.

To fully appreciate the import of OTR's actions, one must understand the history between these two companies and the intellectual property at issue.

**A.    OTR Knows that Blacksmith Owns Intellectual Property Rights in *both* the Trademarks and the Tread Designs**

Blacksmith and OTR each trace their history back to a common owner, the late Fred Taylor, such that the two companies (through predecessors) were at one

2

time affiliated. [Doc.11-3 at ¶26]. Through a series of agreements, ownership and licensing of certain intellectual property rights were delineated as between Blacksmith and OTR.

Relevant to this dispute, Blacksmith acquired ownership of the following trademarks: OUTRIGGER, STABILIZER, and WEARMASTER ("Marks"), each of which is associated with a specific tire Product, including a unique tread design for each, that is recognizable in the industry. *Id*. at ¶24. Blacksmith also acquired ownership in the intellectual property rights, including trade dress and design patents, to the Products manufactured and distributed under the Marks, identified in the TLA as the "Licensed Products." [First-Filed Action, Doc.1-7 at 1]. On May 2, 2019, Blacksmith and OTR entered into the TLA, a worldwide trademark license in which Blacksmith authorized OTR to use the Marks **_and the molds_** to make the Licensed Products manufactured and distributed under the Marks in exchange for a royalty payment. *Id*. at [Doc.1-7 at 8, Schedule 2, ¶1]. It has always been clear between the parties that the Marks are each tied to their respective Product (and mold), such that for Blacksmith to license OTR the Marks, those Marks had to be used in connection with the correlating Licensed Product, as they are known in the industry. *Id*.

OTR first failed to pay any royalty *at all* to Blacksmith for nearly two years, and then misrepresented and intentionally under-reported its net sales to avoid

3

paying the full royalties owed. [Doc.11-3 at ¶¶33-43]. Blacksmith was forced to independently verify OTR's representations by contacting OTR's manufacturers (using the molds authorized under the TLA), who confirmed Blacksmith's suspicion that OTR's purchase of Products covered by the TLA was substantially greater than what OTR had reported to Blacksmith. *Id*. at ¶39. OTR's intentional concealment of sales, and failure to pay required royalties, ultimately led to Blacksmith filing the First-Filed action. It seems that OTR's propensity for misconduct has not changed.

Blacksmith is also the owner of all intellectual property rights, including trademarks, trade dress, and design patent rights (U.S. Patent No. D893,404) ("the '404 Patent") in the Lightning tire products. *Id*. at ¶¶ 23, 25, 31. Blacksmith also discovered that OTR was infringing the intellectual property associated with the Lightning tire products, including Blacksmith's LIGHTNING and LIGHTNING BOLT trademarks and the '404 Patent, which was the second major issue raised in this litigation. *Id*. at ¶¶52-59.

It is OTR's failure to abide by prior agreements, indeed their conduct of intentionally concealing sales to avoid royalty payments, and blatant infringement of Blacksmith's intellectual property rights that led to this dispute in the first instance. Moreover, it is what led to Blacksmith's insistence of a Supply Agreement of the Products themselves, as opposed to a license of intellectual property rights, to settle this dispute. *See* First-Filed Action at [Doc.22 at 13]. Blacksmith insisted that

OTR purchase the Products from Blacksmith (if it were to sell the Products) so that OTR could not again conceal the number of Products manufactured and obscure its royalty reports.

OTR was not required to purchase Blacksmith's Products under the Supply Agreement—it could invest in the development of its *own* designs and sell those—but it cannot "manufacture/procure and sell Product(s)" (using Blacksmith's authorized molds, designs, and suppliers), remove Blacksmith's name and trademarks, and sell them under new names, as that breaches the Settlement Agreement, violates Blacksmith's intellectual property rights, and causes significant consumer confusion. *Id*. at 13, ¶1.1.

### B. OTR *Knows* that its Conduct Infringes Blacksmith's Rights and is Reverse Passing-Off; the Exact issue has been Litigated

In 2014, Blacksmith (through its predecessor), OTR (through its predecessor), and Fred Taylor's company F.B.T. Enterprises, Inc. ("FBT") collectively filed suit against West Worldwide Services, Inc. and Samuel J. West (collectively "West") for infringement of the Outrigger trademark and tire tread design. Evidence revealed that West had requested the Chinese manufacturer of the Outrigger tires to use the same molds as OTR/Blacksmith/FBT's Outrigger Product but "take out the nameplate and all the sidewall information…." *OTR Wheel Engineering, Inc. v. West Worldwide Services, Inc.*, 897 F.3d 1008, 1014 (9th Cir. 2018). The case proceeded to a jury trial and multiple appeals before the Ninth Circuit. Of importance here:

5

***First***: the jury found, and the Ninth Circuit *affirmed*, that OTR/Blacksmith/FBT prevailed against West on its claim for reverse passing-off, based on false designation of origin under 15 U.S.C. § 1125(a), regarding the origin of Outrigger tires. ***Second***: OTR/Blacksmith/FBT asserted a registered trade dress in the Outrigger tread design, which the jury found, and the appellate court affirmed, was invalid. However, the Ninth Circuit expressly acknowledged the cancellation of the registration did not affect the *unregistered* trade dress that OTR/Blacksmith/FBT argued still existed.[1]

In other words, OTR (together with Blacksmith) successfully argued that the very actions OTR is taking here constituted reverse passing-off, based on false designation of origin under 15 U.S.C. §1125(a), regarding the origin of Outrigger tires. Further, OTR (together with Blacksmith) acknowledged and in fact argued to the Ninth Circuit that common law trade dress rights existed in these tread designs now owned by Blacksmith, even in light of the invalidation of the registration. This background further evidences OTR's bad faith and fraud in its current position with respect to this Settlement Agreement, as Mr. Gilkenson admits in his Declaration

---

[1] The Ninth Circuit ultimately determined that OTR/Blacksmith/FBT had not asserted a claim for unregistered, or common law, trade dress in that case so they were not entitled to a new trial on that claim. However, important here is that OTR knew at that time that there was unregistered trade dress protection in the tread design because they argued for it together with Blacksmith. This took place prior to the assignment of IP from Fred Taylor to Blacksmith.

6

that OTR is "███████████████████████████

███████████████████████████████████

██████" [Doc. 21-1, ¶9].

### C. Blacksmith Continues to Discover Evidence that OTR Never Intended to Purchase the Product(s) Under the Supply Agreement

Since this dispute regarding the Settlement Agreement arose, Blacksmith has discovered OTR never intended to purchase Products from Blacksmith. Fraud is difficult to prove without discovery from the accused party, but Blacksmith has been able to collect, and continues to collect, evidence of OTR's fraudulent inducement.

*First*, OTR's counsel stated on July 31, 2024—the same day that OTR filed this declaratory judgment action—that OTR had no plans to buy Products from Blacksmith under the Supply Agreement mere months after the agreement was executed. [Doc. 11-2, ¶ 10]. This was not planned overnight. *Second*, Blacksmith also discovered (after the settlement agreement was executed) that OTR launched the infringing Product that is identical to Blacksmith's Outrigger at a trade show in February 2024. In other words, while this case was pending, while the Parties were negotiating the Settlement Agreement and Supply Agreement, and several weeks before the agreements were executed on April 12, 2024, OTR had already made arrangements to "manufacture/procure and sell" the "Product(s)" without Blacksmith's trademarks (and without Blacksmith's knowledge) (Exhibits 1, 2):

7





***Third***, in addition to admitting that OTR is having Products made by suppliers using Blacksmith's "█████████████████████████████," Mr. Gilkenson also states that █████████████████████████████████ █████. [Doc.11-1, ¶10]. Clearly OTR never had any intention of purchasing Products from Blacksmith where (1) OTR signed on to an agreement that it thought was "█

8

▆" (2) OTR thought it could simply knock off Blacksmith's Products (using molds that were only permitted for use under the superseded TLA), and (3) OTR thought it could re-label Blacksmith's Products by simply removing Blacksmith's trademarks—once again, to avoid paying royalties to Blacksmith.

*Fourth*, Blacksmith recently discovered an advertisement from one of OTR's distributors suggesting that the "OTR LIFTBOSS S/T (WAS OUTRIGGER)":



9

Consumers will likely believe that "LIFTBOSS" is the new name for Blacksmith's "OUTRIGGER," causing significant harm to Blacksmith's intellectual property rights.

This is more than sufficient evidence to prove the five elements to void a contract based upon fraud in the inducement. *See Earthcam, Inc. v. Oxblue Corp.*, No. 1:11-CV-2278-WSD, 2014 WL 793522, at *2 (N.D. Ga. Feb. 26, 2014) (citing *Pacheco v. Charles Crews Custom Homes*, 289 Ga. App. 773, 658 S.E.2d 396, 398 (2008); Ga. Code Ann. § 13–5–5).

## II.   OTR'S *Anticipatory* Declaratory Judgment Action Should Be Dismissed

It has long been the case that "a district court may decline to entertain a declaratory judgment action [where] the declaratory judgment action was filed in apparent anticipation of the other pending proceeding." *Ven-Fuel, Inc. v. Dept. of the Treas.*, 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted). Permissive declaratory judgment jurisdiction sounds in equity and favors "comprehensive disposition of litigation" rather than piecemeal solutions:

> The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.

*Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967) (affirming dismissal and noting that the plaintiff can "obtain an adjudication of its legal rights" in the other forum) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183-184 (1951)). That the First-Filed Action is the proper venue for either enforcement of the settlement agreement *or* adjudication of OTR's fraud is no surprise to anyone, least of all OTR.

**OTR has known all along** that Blacksmith maintains strong rights in well-known Outrigger tread design and that the Ninth Circuit held it illegal to reverse pass-off those *exact same* Outrigger tread designs. *OTR Wheel Engineering*, 897 F.3d at 1025 (*affirming* Judgment of reverse passing-off of Outrigger tread design).

**OTR has known all along** that OTR was taking steps to remove the Outrigger trademark from the Outrigger molds, *supra*, pp. 8-9, announcing the launch of the infringing tires just prior to settlement and admitting that the treads remain the same.

**OTR has known all along** that the express purpose behind the Supply Agreement was to avoid a repeat of OTR's illegal sales of, *inter alia*, unlicensed Outrigger, Wearmaster, and Stabilizer tires. In short, OTR has known all along about its *own* fraud.

**OTR has known all along** that this Court in the First-Filed Action expressly retained jurisdiction, First-Filed Action at [Doc. 15], and that the Settlement Agreement expressly provides that "[a]ny dispute relating to the subject matter of

11

[the 2024 Supply Agreement] must be brought in [this Court]." [Doc.1 at ¶30]. It is no shock to OTR that Blacksmith as moved to reopen the First-Filed action upon learning of OTR's fraud.

In contrast, **_Blacksmith only recently learned_** of OTR's deception in fraudulently inducing Blacksmith to enter into the Settlement Agreement. In its Opposition Brief, OTR argues that Blacksmith merely "threatened OTR with a lawsuit to enforce the Supply Agreement." [Doc.21 at 12]. That Blacksmith merely threatened litigation for breach is true **_as of that moment in time_** (June 20, 2024) only because Blacksmith had not yet learned what OTR had known along—that OTR had fraudulently induced the Settlement Agreement and never had any intention of complying with the agreement. As set forth above, Blacksmith did not even begin to suspect fraud until OTR's counsel stated on July 31, 2024 that OTR had no plans to ever buy Outrigger Products from Blacksmith. [Doc. 11-2, ¶ 10]. Blacksmith's own subsequent investigations revealed, and continues to reveal, that OTR was indeed selling Outrigger Products in violation of Blacksmith's Lanham Act rights and in violation of foundations upon which the Settlement Agreement was reached. That is fraud. It should come as no surprise to OTR that, upon learning that the Settlement was procured through fraud, Blacksmith would enforce its rights.

The _anticipatory_ nature of OTR's Second-Filed declaratory action is revealed in the fact that OTR first conveyed its decision (internally made months earlier) to

*never* purchase Outrigger Products to opposing counsel the *same* day it filed the Second-Filed Action. It is entirely disingenuous for OTR to argue that Blacksmith had never threatened to re-open based on fraud when OTR only revealed its fraud the same day OTR filed Second-Filed action. Indeed, the fact that OTR has pushed back so strongly against even consolidation of the First and Second-Filed actions reveals that its strategy all along has been to game the judicial system via declaratory judgment. However, as the Fifth Circuit and, indeed, the Supreme Court expressly recognized many years ago: "Wise judicial administration…does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature [and] an ample degree of discretion [is] appropriate…." *Amerada Petroleum*, 381 F.2d at 663 (quoting *Kerotest*, 342 U.S. at 183-184). Here, equity clearly counsels dismissal of the Second-Filed Action. Here, as in *Amerada Petroleum*, OTR can "obtain an adjudication of its legal rights" in the First-Filed Action. 381 F.2d at 663.

### III.   In the Alternative, Consolidation or a Stay is Appropriate

As with declaratory judgment jurisdiction, consolidation (or a stay of the Second-Filed action), is entirely within the equitable discretion of the Court. *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1495 (11th Cir. 1985); Rule 42(a). OTR concedes this to be the case. The same rationale underpinning the application of discretion under the Declaratory Judgment Act is applicable with respect to

13

consolidation, namely, "conservation of judicial resources and comprehensive disposition of litigation…." *Amerada Petroleum*, 381 F.2d at 663 (quoting *Kerotest*, 342 U.S. at 183-184).

Here, Blacksmith has argued that the Settlement Agreement in the First-Filed Action was obtained through fraud. *See generally*, First-Filed Action, [Doc. 21]. If Blacksmith is correct that OTR committed fraud in the inducement, all claims in Second-Filed Action (the declaratory judgment claims and the tortious interference claims) are entirely moot as there is no binding settlement agreement or supply agreement. That is, there would be no case or controversy sufficient to satisfy declaratory judgment jurisdiction nor would there be any legal basis for tortious interference.

Likewise, even if Blacksmith is wrong and there was no fraud, substantial issues going to the heart of the First-Filed Action and resulting agreements remain extant, including potential breach of the agreements. Either way, there is substantial overlap between the parties, facts, law, and ultimate issues at stake in the respective First and Second-Filed Actions. Accordingly, equity also favors consolidation of the actions or even a stay of the Second-Filed Action pending the outcome of the Motion to Reopen the First Filed Action.

## IV.   Conclusion

For all of the above reasons, the Second-Filed Action should be dismissed, or in the alternative, consolidated with the First-Filed Action.

Respectfully submitted this 18th day of November, 2024.

*/s/ Spencer P. Mead*
Spencer P. Mead
Georgia Bar No. 404464
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, NC 28280
Tel:   704-375-0057
Fax:   704-332-1197
Email: smead@shumaker.com

Robert H. Smalley, III
Georgia Bar No. 653405
McCamy, Phillips, Tuggle & Fordham, LLP
Post Office Box 1105
Dalton, Georgia 30722-1105
Tel: (706) 278-4499
Fax: (706) 278-5002
Email: rsmalley@mccamylaw.com

*Counsel for Defendant*

15

## **LOCAL RULE 7.1(D) CERTIFICATION**

The undersigned counsel certifies that the foregoing document has been prepared with one of the font and point selections approved by the Court in LR 5.1(C).

This the 18th day of November, 2024.

>                          */s/ Spencer P. Mead*
>                          Spencer P. Mead
>                          Georgia Bar No. 404464

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2024 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send email notifications of such filing to all counsel of record.

<i>/s/ Spencer P. Mead</i><br>
Spencer P. Mead<br>
Georgia Bar No. 404464